In the Matter of SIDNEY GONDELMAN, an Attorney, Respondent.

Second Department, March 15, 1929.

Mortimer W. Byers [Meier Steinbrink with him on the brief], for the motion.

John J. Curtin, opposed.

PER CURIAM. Respondent was admitted to the practice of the law on April 2, 1923. It was in part charged against him, by a petition verified June 8, 1928: (1) That for the past five years he on many occasions parted with valuable considerations to ten persons named, who were not attorneys at law, as an inducement for procuring to be placed in his hands, as an attorney at law, certain demands and alleged causes of action for personal injuries and otherwise; (2) that he has endeavored to thwart, impede and defeat the investigation begun in 1928 and conducted by Hon. LEANDER B. FABER, a justice of the Supreme Court, acting under an order of this court, by concealing and withholding his office records, by knowingly making false and untrue statements in answer to questions put to him while under oath as a witness in such investigation, and by seeking to prevent other witnesses from telling the truth and by instructing them to make untrue statements, and by seeking to suppress information which was material and necessary for the proper conduct of the said investigation.

Respondent denied these charges but did not testify in his own behalf before the official referee. Three of respondent's employees who, he finally admitted before Mr. Justice FABER, solicited and procured cases for him, although he had previously emphatically denied that fact, did not testify before the official referee. The record does not show whether or not they testified before Mr. Justice FABER. One of these employees was respondent's brother. The proof presented before the official referee came from a considerable number of witnesses and the testimony of respondent before Mr. Justice FABER, in the investigation above mentioned, which was read into the record.

The proof shows:

(1) That respondent had in his employ at least three men, not lawyers, who procured cases for him and were paid a weekly salary of from $50 to $75 and a part of respondent's fees realized out of the cases brought to him. In order to establish these facts, it was necessary for petitioner to call a large number of witnesses,

many of whom were parties to, or related to parties in cases which were so procured in behalf of respondent. On the hearing before Mr. Justice FABER, respondent vigorously denied a number of times that any of his employees ever procured any cases for him. He finally admitted that some of these employees did procure cases for him, and that he paid to them a weekly wage and bonuses from time to time. He insisted, however, that he never shared his fees with them. This insistence was continued to the very end of the hearing before Mr. Justice FABER. The official referee made no direct finding of a division of fees, but would have been warranted in making such a finding: (a) From the testimony of a witness, an experienced "ambulance chaser," who was in the employ of respondent from November, 1927, to January, 1928, under an arrangement by which he was paid according to the nature of the injuries in the case procured. While this witness was to some extent discredited, his testimony in this respect seems to have been convincing; at any rate, it was not contradicted before the official referee since respondent did not take the stand; (b) failure to call before the official referee his brother, who, he admitted, procured cases for him and who could have testified to the fact one way or the other as to the mode of payment; (c) it appeared before the official referee that on the hearing before Mr. Justice FABER respondent stated he was unable, but really was unwilling, to account for the sum of upwards of $14,000 expended by him out of over $140,000 fees received by him in the year 1927. This sum of over $13,000 was expended out of petty cash, the slips for which were destroyed at the end of the year. Respondent did not take the stand before the official referee to explain this item.

(2) Respondent obtained information from a newspaper reporter, whose offices were in the neighborhood of the Brooklyn police headquarters, as to accidents which had been reported to police headquarters. For giving this information, day and night, respondent paid the newspaper reporter twenty dollars a week from the middle of 1926 to the summer of 1927. The testimony concerning this was elicited from the newspaper reporter before the official referee. On the hearing before Mr. Justice FABER, respondent at first denied that he received reports from this newspaper reporter. He afterwards reluctantly admitted the fact.

(3) From time to time respondent paid money to police officers of the city of New York, or paid for suits of clothing for them, for information as to accidents and for recommending cases to him. This testimony came from the lips of respondent before Mr. Justice FABER after his examination had continued for a considerable period and after he asserted that he intended to tell

the truth. He seemed to tell part of the truth, but did not tell all of it.

(4) Respondent paid doctors of medicine in several hospitals for forwarding information to his office as to patients in the hospital who had met with accidents. The testimony concerning this item was given by several of the doctors before the official referee. It was at first denied and then admitted to be the fact by respondent before Mr. Justice FABER.

(5) During the hearing before Mr. Justice FABER, respondent presented a retainer in one of his cases which he asserted was the original, when, as a matter of fact, it had been prepared while the hearing was proceeding. The real purpose of this was disclosed from the testimony of a court attendant, in attendance before Mr. Justice FABER during the investigation, that respondent said to the court attendant that a former client was coming along to the hearing room and he would like to take the client into an ante room to have him sign a retainer because respondent had already testified before Mr. Justice FABER that he had a signed retainer from the client, when, as a matter of fact, he did not have it.

(6) On the hearing before Mr. Justice FABER, respondent was directed to produce an index of his cases which he had stated was in existence. Instead of producing the original, he produced an index which had just been prepared, and pretended that it was the original until his attention was called to the real fact, and then the original was presented. The only purpose of this conduct that is disclosed is that he was seeking to avoid questioning with reference to cases which had been disposed of and which were omitted from the index which he pretended was the original.

(7) One of the witnesses before the official referee testified that, shortly before he appeared before Mr. Justice FABER, respondent said to him that if anybody asked him how he came to retain respondent as his lawyer he should say that friends recommended him. The fact was that no friends had recommended respondent to him, and that the witness had been solicited to retain respondent, and that respondent was unknown to the witness before the time of solicitation. As respondent did not take the stand, there was no contradiction of the testimony of this witness.

(8) During the year 1927, respondent received, from verdicts and settlements, fees amounting to $287,613.88, of which his clients' share was $146,291.87 and his share $141,322.01. This was the fifth year of respondent's practice. Despite these large receipts, respondent stated before Mr. Justice FABER that he kept no ledger, register or cash book. His accounts were made up by

an accountant from his check book and vouchers. Respondent testified before Mr. Justice FABER that he destroyed his check books and vouchers for the years 1926 and 1927 directly after each year respectively. This testimony was false. As to part of the 1927 check books and vouchers, it clearly appeared that they were in the hands of his accountant as late as April, 1927, and returned to respondent about that time. When respondent's attention was called to the fact that his accountant had stated that he had delivered certain checks and stubs to him in April, 1927, only four or five weeks before respondent was testifying, he said that if his accountant so testified, then he was taking his accountant's word for it. When asked if there was any objection to telling why he disposed of them, he answered: " I would rather not answer." The plain inference is that these check books and vouchers were either concealed or destroyed in anticipation of the investigation before Mr. Justice FABER.

It is unnecessary to enter into a detailed consideration of the various activities of respondent and of his attitude on the hearing before Mr. Justice FABER. The testimony demonstrates very clearly the evils of the system of ambulance chasing. Competition between " ambulance chasers," and between " ambulance chasers " and attorneys, in procuring cases, visits to homes and hospitals to procure retainers at unseemly hours and when the injured person or the members of his family were in no mental condition to enter into contracts for the engagement of lawyer's services, division of fees with solicitors and procurers, payment of moneys to officials, doctors and others for help in procuring cases, the use of photographs of checks of amounts of recoveries had and newspaper clippings showing successes in court for the purpose of procuring clients, are all laid bare. It may be that payments to police officers for recommending cases, and to doctors in hospitals for advising of cases there of persons who had been injured in accidents, are not violations of section 274, subdivision 2, of the Penal Law, but it is conduct which is destructive of the high standards of the bar and is contrary to the Canons of Ethics. All in all, the testimony shows " ambulance chasing " pursued to its utmost limits, except there is no proof in the case that respondent ever cheated or otherwise wronged any of his clients and no proof of actions brought upon false or exaggerated claims except as the possible existence thereof may be inferred from respondent's conduct before Mr. Justice FABER. Respondent tried one or two cases in the Supreme Court and really was a trader in negligence cases. His position before Mr. Justice FABER shows respondent to be unreliable and possessed of a reckless disregard of truth. His failure to take the

stand compelled the official referee to judge of his character and fitness from the testimony of other persons and from his own unsatisfactory testimony before Mr. Justice FABER — all strongly unfavorable to him. In the face of a quest as to his character and fitness, he maintained a stolid silence before the official referee, who only heard his voice, as stated, through the testimony before Mr. Justice FABER. Not one word of defense, excuse or extenuation is offered to this court by respondent; no effort made to present a reason for clemency. His methods of practice in violation of law (Penal Law, § 274, subd. 2) and the ethics of the bar, false testimony and concealment of his true financial affairs before Mr. Justice FABER, and his endeavors otherwise to thwart the investigation before that justice, require that he be disbarred.

The motion should be granted, the respondent disbarred and his name ordered stricken from the roll of attorneys.

Present — LAZANSKY, P. J., YOUNG, KAPPER, HAGARTY and CARSWELL, JJ.

Motion to confirm report of official referee granted, respondent disbarred and his name ordered stricken from the roll of attorneys.